**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

ELIZABETH JENSEN, GWENDOLYN            :
JONES, KATHRYN GREENE                  :
on behalf of themselves and all others :
similarly situated,                    :
                                       :
                                       :   Civil Action No. 3:16CV00312
            Plaintiffs,                :
                                       :
v.                                     :
                                       :
                                       :
CLARITY SERVICES, INC.,                :
15550 Lightwave Drive, Suite #350      :
Clearwater, Florida 33760              :
                                       :
and                                    :
                                       :
                                       :
CHARLES HALLINAN,                      :
3 Bala Plaza, East Suite 117           :
Bala Cynwyd, PA 19004                  :
                                       :
and                                    :
                                       :
                                       :
TIMOTHY RANNEY,                        :
15550 Lightwave Drive, Suite #350      :
Clearwater, Florida 33760              :
                                       :
                                       :
            Defendants.                :
_____:

**CLASS ACTION COMPLAINT**

The Plaintiffs, by counsel, and for their Complaint against the Defendants, they allege as follows:

**PRELIMINARY STATEMENT**

1.      This is an action brought pursuant to 15 U.S.C. §§ 1681a–x (the Fair Credit Reporting Act or "FCRA"). Plaintiffs allege a class claim against Defendant Clarity Services, Inc. ("Clarity"), a consumer reporting agency that focuses its products to online payday lenders.

1

Plaintiffs further allege that the principals of Clarity, Charles Hallinan and Timothy Ranney, share joint and several liability for the class claim alleged herein by virtue of their direct personal involvement in the underlying wrongful conduct, and also by piercing the veil of Clarity because it was used to perpetrate the fraud, to gain an unfair advantage and to commit the injustice alleged herein.

2.    In this instance, Plaintiffs allege class claims against Defendants pursuant to §§ 1681b(a) and 1681e(a) because Clarity allowed and *secretly* facilitated the unlawful access of consumers' credit reports by Clickspeed Marketing, Inc., a known marketing service (referred to in the payday lending industry as a "lead generator") that would resell the information to predatory lenders, who in turn would use the information to solicit potentially vulnerable consumers. The FCRA does not permit consumer reporting agencies to deliver reports for lead generation purposes. 15 U.S.C. § 1681b; *see also* Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, an FTC Staff Report with Summary of Interpretations, July 2011 (explaining that the "only circumstance in which consumer report information may be used for marketing purposes" is when a creditor or insurer provides a consumer with a "firm offer of credit or insurance"). Defendants knew that Clickspeed was using its database for purposes prohibited by the FCRA, yet Defendants facilitated this fraudulent conduct for their financial benefit and to gain an unfair advantage over their major competitors, such as Microbilt and DataX.

3.    Plaintiffs also allege individual claims against Clarity pursuant to § 1681g(a)(1), which requires consumer reporting agencies to "clearly and accurately" disclose to consumers "all of the information in the consumer's file at the time of the request." In this instance, Clarity

2

withheld the fact that it furnished Plaintiffs' consumer reports to Clickspeed when Plaintiffs requested and received copies of their files from Clarity.

## JURISDICTION

4.      This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Plaintiffs reside in this District and Division and significant part of the Plaintiffs' claims occurred in Virginia.

## PARTIES

6.      Plaintiff Elizabeth Jensen ("Ms. Jensen") is a natural person who resides in Virginia and in this District and Division. Ms. Jensen is a consumer as defined by the FCRA at §1681a(c).

7.      Plaintiff Gwendolyn Jones ("Gwendolyn Jones") is a natural person who resides in Virginia and in this District and Division. Ms. Jones is a consumer as defined by the FCRA at §1681a(c).

8.      Plaintiff Kathryn Greene ("Ms. Greene") is a natural person who resides in Virginia and in this District. Ms. Greene is a consumer as defined by the FCRA at §1681a(c).

9.      Defendant Clarity Services, Inc. ("Clarity") is a foreign corporation doing business in Virginia. Upon information and belief, Clarity is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f). Clarity is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

10.     Defendant Charles Hallinan ("Hallinan") is a natural person and a resident of the state of Pennsylvania. Hallinan is the co-founder and co-owner of Clarity.

11.     Defendant Timothy Ranney ("Ranney") is the president, chief executive officer and a co-owner of Clarity.

## FACTUAL ALLEGATIONS

### *Overview of Lead Generation*

12.     Without a brick-and-mortar store, most online payday and other predatory lenders rely heavily on marketing and advertising to prey on consumers.[1]

13.     In order to find potential customers, Internet payday lenders pay companies known as "lead generators," which are businesses that collect information on potential borrowers searching for marketing such consumers as potential targets for payday lenders.

14.     Lead generators pay high fees to several sources to acquire borrower information, including consumer reporting agencies. Often, lead generators use a non-Big-3 consumer reporting agency,[2] such as Clarity, because it does not impose the typically more demanding verification and "permissible purpose" restrictions usually followed by the publically scrutinized Big-3 CRAs.

15.     Lead generators primarily obtain the consumer reports to review consumers' personal financial information in order to obtain details of the consumers' lifestyle, mode of living, whether the consumer has recently applied for other subprime credit, and other evidence of a vulnerability to high-cost credit.

16.     In turn, lead generators then auction the consumer information to lenders who make predatory loans or to intermediary data brokers, who then re-sell the leads to such lenders.

---

[1] Most of the facts from this section are taken from the study published by the Pew Charitable Trust's report released in October 2014, entitled FRAUD AND ABUSE ONLINE HARMFUL PRACTICES IN INTERNET PAYDAY LENDING. (*available at* http://www.pewtrusts.org/en/research-and-analysis/reports/2014/10/fraud-and-abuse-online-harmful-practices-in-internet-payday-lending, last visited May 5, 2015)
[2] The "Big-3" CRAs are Equifax, TransUnion, and Experian.

17.     Typically, lead generators repeatedly resell the same applicant's information to different companies after an exclusivity period for the "first-look buyer," who pays a higher cost for a brief exclusivity period in order to be the first lender to contact the consumer. In fact, often the same data is resold with the lead generator falsely claiming such exclusivity to its customers.

18.     Often times, lists—such as a list of people who have applied for payday loans— are sold and then resold by brokers, especially if a company does not wish to make a loan.

19.     Ultimately, this practice leads to unending harassment and solicitation by numerous online lenders and data brokers as soon as a consumer does a basic search on the Internet for potential credit.

20.     As part of this process, online lenders, data brokers, and lead generators also unlawfully obtain consumers' credit reports for several purposes, including to determine whether a consumer is still actively looking for an internet loan, whether the consumer received an internet loan, or whether the consumer may qualify or be in need of an additional loan.

21.     As reflected by the credit reports of the named Plaintiffs, this results in the improper access of a consumer's credit report by multiple entities for months, often years, after a consumer applies for a single internet loan by entities that a consumer never contacted, nor authorized to obtain their private financial details.

### Common Allegations as to Clarity and Clickspeed

22.     Clarity is not credit bureau in the traditional sense, but rather Clarity focuses its reporting on consumers who may be vulnerable to subprime consumer loans, such as internet pay day loans. Its data is focused less on whether a consumer will repay a debt and more on whether or not a prospective target is likely to apply and sign up with an Internet lender.

23.    As part of this process, Clarity lets certain customers access its consumer database for impermissible purposes, primarily to allow its customers to identify potential payday lending opportunities and then sell the identities of those consumers as "leads".

24.    Consistent with its unlawful procedures, Clarity allowed Clickspeed Marketing, Inc. to obtain consumer reports regarding the Plaintiffs and the putative class members.

25.    Upon information and belief, Clarity also entered into a contract with Clickspeed in May 2009 where Clarity expressly acknowledge that Clickspeed would use consumer reports from Clarity for the purpose of lead generation and mass marketing.

26.    Clarity and Clickspeed's contract violated §§ 1681b and 1681e(a) of the FCRA.

27.    Moreover, a basic Internet search on Clickspeed shows that was always a lead generation company rather than a lender. For example, on its homepage, www.clickspeed.com, Clickspeed describes itself as "a leader in online business to consumer lead generation, delivering marketing solutions through technology driven products such as: hosted lead management solutions, data monetization services, marketing and transactions email services, affiliate network and marketing programs, and integrated outsourced phone center solutions."[3]

28.    Similarly, under the "Services" section of Clickspeed's website, the only service identified is "LEAD GENERATION," which asserts "We aren't new to lead generation; we've been perfecting this system to work for our clients since 2001. With Leadsourcer we've combined the latest technology and our extensive marketing expertise to bring our clients results. With these two ingredients we are able to provide the highest quality services and the best converting leads on the market. Our technology solutions allow us to not only provide real-time leads, but we have custom screening tools that can deliver leads with the criteria you specify. We

---

[3] www.clickspeed.com.

never re-sell our leads and we offer you fantastic real-time reporting. Stop wasting time and get the leads that you really need to drive revenue into your business today!"

29.     Despite this available knowledge, Clarity regularly allowed Clickspeed to access individual consumers' reports dozens of times within a single hour. Where such repeated uses would ordinarily serve as warning signs of misuse of consumer reports, Clarity continued to allow unfettered access to its database without consideration of these unusual use patterns.

30.     One of the purposes for which the FCRA permits access to a consumer's credit report is for sending marketing "pre-screen" offers for specific credit terms. This provision – 15 U.S.C. § 1681b(c)(B) – requires a specific "firm offer of credit" and other specific disclosures.

31.     From all of 2012 and into 2013, Clarity classified Clickspeed inquiries as "PC" to "Screen Consumer- In connection with pre-screen back-end verification that determines if the consumer who accepts pre-screen firm offer still meets the specific criteria" despite knowing that Clickspeed never makes any firm (or other) offers of credit to consumers and certainly never attempted to comply with § 1681b(c)(B).

32.     By example, Clarity provided Ms. Jensen's consumer report to Clickspeed at least 11 times, including multiple occasions within a single hour and on at least one occasion within one minute of one another within the five years prior to filing the Complaint.

33.     Similarly, Clarity provided Ms. Jones' consumer report to Clickspeed at least 8 times, including multiple occasions within a single hour and on two occasions multiple times in the same minute within the five years prior to filing the Complaint.

34.     Likewise, Clarity provided Ms. Greene's consumer report to Clickspeed on at least one occasion within the five years prior to filing the Complaint.

7

35.    None of the Plaintiffs ever applied for credit with Clickspeed or provided authorization to Clickspeed to allow it to access their respective consumer reports.

36.    Based on the foregoing, Clarity violated the FCRA by furnishing the Plaintiffs and putative class members' consumer reports to Clickspeed without a permissible purpose in violation of § 1681b.

37.    Moreover, Clarity's conduct also violated § 1681e(a), which prohibits a consumer reporting agency from furnishing a consumer report if it has "reasonable grounds for believing that the consumer report will not be used for a purpose" listed in § 1681b.

38.    Upon information and belief, Clarity furnished in excess of one hundred thousand consumer reports to Clickspeed, including the consumer reports of each of the Plaintiffs.

39.    As a result of this conduct, Plaintiffs and the class members suffered concrete injuries. In addition to having their privacy invaded, Plaintiffs and the class members have had their personal identifying and financial information unnecessarily disseminated to Clickspeed, who in turn disseminated this information to others. Clarity has subjected class members to an increased risk of identity theft and/or a data breach, resulting in consequential anxiety and emotional distress. These injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

### *Involvement and Personal Liability of Defendants Hallinan and Ranney*

40.    During the pertinent times, Hallinan was the majority owner of Clarity, who controlled the business and had direct personal involvement of the unlawful conduct described above.

8

41.     Similarly, Ranney was the president, chief executive officer and co-owner of Clarity, who had the managerial responsibilities for the activities of Clarity, including direct personal involvement of the unlawful conduct described above.[4]

42.     From at least 1997 until at least 2013, Hallinan himself owned, operated, controlled, and financed numerous business entities (at least 20), which issued, serviced, funded, and collected debt from small, short-term, high-interest pay-day loans.

43.     In addition, Hallinan created and ran Apex 1 Lead Generators, Inc., obviously by its name a lead generator, which gathered and resold personal information about consumers to enable his companies and others to target them for illegal Internet loans.

44.     Hallinan thus desired to marshal the personal consumer information they had obtained in operating these many payday lending companies and create Clarity as a new revenue stream by adding all of the information from the Hallinan payday lenders to the Clarity database.

45.     Hallinan retained an approximately one-third interest in Clarity, but tried to keep his ownership confidential to avoid discovery of the connection between his own payday lending business and Clarity.

46.     Notwithstanding the growing amount of information available to Clarity from the Hallinan companies, Defendants still sought to build further information by establishing a relationship with other companies such as Clickspeed whereby Clarity would provide at no charge unsupervised (and unlawful) access to Clarity's database and consumer reports in exchange for Clickspeed furnishing to Clarity all of the consumer information Clickspeed gathered.

---

[4]     http://files.consumerfinance.gov/f/201512_cfpb_consent-order_clarity-services-inc-timothy-ranney.pdf ("Ranney has formulated and directed the acts of Clarity, including the acts and practices set forth in this Consent Order.") Paragraph 9.

47.     Upon information and belief, Hallinan and Ranney knew and facilitated Clickspeed's efforts to obtain consumer reports for the purpose of lead generation and mass marketing. Most notably, Hallinan and Ranney participated in the decision to enter into the contract that allowed Clickspeed to obtain consumer reports from Clarity for the purpose of lead generation.

48.     Hallinan and Ranney had full knowledge that Clickspeed did not have a permissible purpose as required by § 1681b of the FCRA and that it would sell information obtained from Clarity to payday lenders interested in targeting potentially vulnerable consumers.

49.     Upon information and belief, Hallinan and Ranney made the decision to allow Clickspeed to unlawfully access Clarity's database in order to gain access to data in the possession of Clarity to expand its database and, in turn, improve the marketability of its own products and the compensation received by Hallinan and Ranney.

50.     Upon information and belief, Hallinan and Ranney have siphoned off most, if not all, of these profits, leaving Clarity deliberately undercapitalized to satisfy the judgment it faces for the fraudulent and deceptive conduct alleged herein.

51.     Accordingly, Hallinan and Ranney may be held personally responsible for their direct involvement in the unlawful conduct and/or by piercing the veil of Clarity because it was used to perpetrate the fraud, to gain an unfair advantage and to commit the injustice alleged herein.

### *Clarity Concealed Clickspeed Inquiries on Plaintiffs' Consumer Reports*

52.     In November 2015, Ms. Jensen mailed written correspondence to Clarity requesting a copy of her file.

53. In response to Ms. Jensen's request, Clarity furnished Ms. Jensen with a copy of her file, which intentionally concealed that Clarity furnished Ms. Jensen's credit report to Clickspeed on at least 11 occasions.

54. As demonstrated by Ms. Jensen's file disclosure, Clarity consciously omitted the Clickspeed inquiries while at the same time providing a record of 56 other inquiries from September 15, 2015, through March 16, 2012. During this timeframe, Clarity furnished Ms. Jensen's report to Clickspeed on multiple occasions.

55. Rather than disclosing this information in accordance with § 1681g(a)(1), Clarity concealed its unlawful conduct and deprives consumers of this congressionally-mandated information in violation of the FCRA.

56. Similarly, Plaintiffs Ms. Jones and Ms. Greene requested copies of their files from Clarity in April 2016.

57. In response to these requests, Clarity furnished Plaintiffs Ms. Jones and Ms. Greene with a copy of each of their consumer files, which intentionally concealed any inquiries related to Clickspeed in each of their files.

**COUNT ONE:**
**VIOLATION OF 15 U.S.C. §§ 1681b(a) and 1681e(a)**
**CLASS CLAIM**

58. Plaintiffs incorporate every allegation above as if set forth herein in full.

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this claim for themselves and on behalf of a class initially defined as:

> All natural persons residing in the United States: (a) whose consumer report was furnished by Clarity (b) to Clickspeed and (c) on or after a date five years prior to the filing of this action. Excluded are employees of Clarity or Clickspeed, attorneys in this action, any Judge as well as his or her staff and family and any person who has previously settled a previous lawsuit with Clarity.

11

60.    **Numerosity. Fed. R. Civ. P 23(a)(1)**. Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

61.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues are: (a) Whether Clarity, as a matter of common practice, furnished consumer reports to Clickspeed for impermissible purposes as established in § 1681b; (b) whether Clickspeed had a permissible purpose to obtain the Plaintiffs' and putative class members' consumer reports; (c) whether the reports Clarity furnished were sold when Clarity had reasonable grounds for believing that the consumer report would not be used for a FCRA permitted purpose; (d) whether Hallinan and Ranney are personally responsible as a result of their personal involvement with the fraudulent conduct; (e) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiffs and the putative class members.

62.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs, as well as every punitive class member, allege violations of the same FCRA provisions, 15 U.S.C. §§ 1681b(a) and 1681e(a). This claim challenges Clarity's consumer report furnishing procedures as it relates to one of Clarity's specific clients, Clickspeed. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

63.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class, because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiffs nor their counsel have any interests which might cause him not to vigorously pursue this action.

64.     **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, none of the class members would have known of the facts underlying the violation or of the legal basis for this action absent this lawsuit.   It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct.   By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

65.     Defendants violated §§ 1681b(a) and 1681e(a) as to the Plaintiffs and putative class members by furnishing consumer reports to Clickspeed when they knew that Clickspeed

13

was a lead generator and when Defendants had reasonable grounds for believing that the consumer report would not be used for a FCRA permitted purpose. As explained above, Defendants knew Clickspeed did not have a permissible purpose as established by § 1681b(a), yet Defendants knowingly violated the FCRA for their own financial gain.

66.     These ongoing violations were willful as they were either intentional, or alternately carried out with reckless disregard, rendering Clarity liable pursuant to 15 U.S.C. § 1681n.

67.     Plaintiffs and the putative class members are entitled to recovery statutory damages, punitive damages, costs, and attorneys' fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n.

**COUNT TWO:**
**VIOLATION OF 15 U.S.C. § 1681g**
**INDIVIDUAL CLAIMS**

68.     Plaintiffs incorporate every allegation above as if set forth herein in full.

69.     Clarity violated § 1681g through its conduct by concealing that it furnished Plaintiffs' consumer reports to Clickspeed when Plaintiffs requested and received copies of their files from Clarity.

70.     As a result of Clarity's conduct, Plaintiffs suffered concrete injuries. In addition to having their privacy invaded, consumer class members have had their personal identifying and account-related information unnecessarily disseminated to the Defendants, and, upon information and belief, to their related information-sharing affiliates. Defendants have subjected consumer class members to an increased risk of identity theft and/or a data breach, resulting in consequential anxiety and emotional distress. These injuries are particularized and concrete.

71.    The violations by Clarity were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Clarity was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

72.    Plaintiffs are entitled to recover actual damages, statutory damages, costs and attorney's fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, the Plaintiffs move for class certification and for judgment against the Defendants for actual and/or statutory damages and punitive damages as alleged, and for attorneys' fees and costs, and such other specific or general relief, including injunctive relief, the Court finds appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**ELIZABETH JENSEN, GWENDOLYN
JONES, and KATHRYN GREENE**

By: _____
                Counsel

James W. Speer, (VSB# 23046)
Virginia Poverty Law Center
919 E. Main Street, Suite 610
Richmond, VA 23219
(804) 782-9430
Fax: (804) 649-0974
Email: jay@vplc.org

Kristi Cahoon Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
Phone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard Anthony Bennett, Esq., VSB #37523
Craig C. Marchiando, VSB #89736
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Phone: 757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
*Counsel for Plaintiffs*