**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **ELIZABETH JENSEN, GWENDOLYN JONES, KATHRYN GREENE** on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Civil Action No. 3:16-cv-312-REP** |
| **CLARITY SERVICES, INC., et al.,** | ) ) | |
| **Defendant.** | ) | |

**DEFENDANT CLARITY SERVICES, INC.'S MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS**

Defendant Clarity Services, Inc. ("Clarity"), by counsel, submits this Memorandum in

Opposition to Plaintiffs Elizabeth Jensen, Gwendolyn Jones, and Kathryn Greene's ("Plaintiffs")

Motion for Sanctions.  ECF No. 37.

**INTRODUCTION**

The Court should deny Plaintiffs' Motion for Sanctions because Plaintiffs have failed to

meet and confer with Defendants prior to filing their motion in violation of Local Rule 37(E)[1]

and the Scheduling Order, ECF No. 18 at II.B.  If Plaintiffs had met and conferred with Clarity,

they would have known that Clarity does not object to the inspection of its electronic data for

purposes of attempting to recover a purported nationwide class list, subject to several safeguards

set forth in this memorandum.

---

[1] "No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy. The Court will not consider any motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue."  L.R. 37(E).

However, should the Court be inclined to consider Plaintiffs' Motion for Sanctions on its merits, the motion should be denied.  Rule 37(e), among others things, requires a legal duty to preserve the allegedly purged information.  Clarity had no duty to preserve the purported nationwide class data after dismissal with prejudice of the Clickspeed-related litigation in *Turnage v. Clarity Services, Inc.*, No. 3:14cv00760, ECF No. 1, Compl. (E.D. Va.) ("*Turnage*"). Clarity had no litigation pending related to Clickspeed after *Turnage* ended.  Moreover, although Plaintiffs' counsel stated that they would look for a client on whose behalf they would sue Clarity again, they did not inform Clarity at any time prior to the filing of the present lawsuit that they had actually retained a specific client.  Threats by a client-less plaintiffs' counsel cannot trigger the expansive duty to preserve that Plaintiffs now seek to impose.

In addition, despite not being obligated to do so, Clarity took reasonable steps to preserve, and did preserve, evidence relevant to the claims and defenses in this matter, including materials related to alleged liability, willfulness, and damages.  Plaintiffs have not suffered any prejudice from the loss of the purported nationwide class list because it is not relevant to the ascertainability of a Virginia-only purported class, which Plaintiffs have already represented they would pursue in this case, or to any other issue in this matter.  Clarity has provided the purported Virginia class list to its counsel, as directed by the Court.

Finally, Clarity's good faith implementation of its document retention policy, and preservation of the relevant materials, belies Plaintiffs' assertions of intentional spoliation.  As discussed below, Clarity had no business purpose to retain the nationwide class list at issue. Moreover, the Fair Credit Reporting Act ("FCRA") specifically addresses the length of time for which a consumer reporting agency must disclose the information at issue.  And that length of

time had long passed with respect to the Clickspeed inquiries at issue at the time the document retention policy was implemented.  Thus, there was no statutory obligation to retain the data.

No sanction against Clarity is warranted.  However, to facilitate discovery and exchange of information in good faith, Clarity does not object to reasonable inspection of its electronic data for the purpose of determining whether a purported nationwide class list is recoverable, subject to the safeguards set forth in this memorandum.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Development of Clarity's Retention Policy

1.      In approximately late April or early May of 2013, prior to *Turnage*, Clarity began developing a document retention policy.  As a consumer reporting agency, Clarity maintains substantial paper and electronic information, and Clarity felt it necessary to have a formalized policy for handling such information.   ECF No. 34-1, Declaration of Sean Dunham ¶ 9 ("Dunham Decl.").

2.      One portion of the document retention policy that Clarity developed was the retention period for "soft" credit inquiries.  Inquiries in this context refer to requests from third parties for information on a consumer's credit.  Unlike "hard" inquiries, soft inquiries are not used in consumer reports.  As such, they are not visible to third parties or used by third parties in making credit decisions.  *Id*. ¶ 10.

3.      In November of 2014, Clarity designated all customer inquiries that were classified as "Pre-Check" inquiries as "soft" inquiries.  This included inquiries related to Clickspeed.  Converting such inquiries to "soft" inquiries had a positive effect on consumers because the inquiries would not be used in subsequent consumer reports and, therefore, would not be visible to, or used by, any third parties.  *Id*. ¶¶ 12-13.

3

4.      Also in November of 2014, Clarity developed a policy that modified the time period for which it discloses "soft" inquiries to a consumer.  The FCRA only requires the disclosure of credit inquiries on a consumer file disclosure, other than for employment purposes, for a one-year period.  *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).  Dunham Decl. ¶¶ 14-15.

5.      Consistent with its FCRA obligations, in March 2015, Clarity implemented its policy and began disclosing only those soft inquiries made within the year preceding the date on which a consumer request is made.  This one-year disclosure period applied to all soft inquiries, including Clickspeed inquiries.  While soft inquiries were subject to a one-year *disclosure* period, the retention period that Clarity was developing also contemplated their *destruction* immediately following the one year disclosure period.  *Id*. ¶ 16.

**B.      The CFPB Began an inquiry in 2013 and Plaintiffs' current counsel brought the *Turnage* lawsuit in November 2014.**

6.      In December 2013, the Consumer Financial Protection Bureau ("CFPB") began an inquiry into Clarity.  *Id*. ¶ 17.  Due to this inquiry, Clarity put a "litigation hold" in place and suspended the development and implementation of its document retention policy through 2013 and 2014.  *Id*. ¶ 18.

7.      In November 2014, Plaintiffs' current counsel filed *Turnage* – a class action lawsuit against Clarity involving the Clickspeed inquiries.  *Turnage*, ECF No. 1, Compl.  Like the plaintiffs in the present case, the plaintiffs in *Turnage* alleged in their complaint that Clarity provided consumer reports to Clickspeed for an impermissible purpose.  Dunham Decl. ¶¶ 19-20.

**C.**     **Clarity settled the *Turnage* case and the CFPB concluded its inquiry in late 2015.**

8.     In 2014 and 2015, Clarity and Plaintiffs' counsel litigated the *Turnage* case heavily. *Id*. ¶ 21.

9.     Plaintiffs' counsel ultimately filed a motion for class certification against Clarity in *Turnage*. In this motion for class certification, the plaintiffs in *Turnage* limited the proposed class that they sought to certify to a Virginia-only class. Specifically, they sought to certify a class of persons residing in the Commonwealth of Virginia whose consumer reports were furnished by Clarity to Clickspeed. *Turnage*, ECF No. 80 at 10.

10.     Consistent with this class definition, the Court in *Turnage* ordered Clarity to produce a class list, narrowed to Virginia consumers, to Plaintiffs' counsel in August of 2015. *Turnage*, ECF No. 85 at ¶ 3. The Virginia class list was marked "CONFIDENTIAL" and produced to plaintiffs' counsel subject to a stipulated Protective Order entered in *Turnage*. *Turnage*, ECF No. 20 at ¶ 4. The Protective Order required Plaintiffs' counsel to return or destroy confidential materials after the conclusion of the case. *Id*. at ¶ 12.

11.     Clarity and Plaintiffs' counsel ultimately settled the *Turnage* lawsuit on an individual basis with each of the named plaintiffs. Dunham Decl. ¶ 24. The *Turnage* lawsuit was dismissed in September of 2015 pursuant to the settlement of the named plaintiffs' individual claims. *Id*. ¶ 25. The plaintiffs in the current case were not parties in *Turnage*.

12.     Clarity had no indication that Plaintiffs' counsel was retained by any additional consumers with claims against Clarity. At no time during the ten-month period between the settlement in *Turnage* and filing of the present lawsuit, did Plaintiffs' counsel send any document preservation letter to Clarity or inform Clarity that Plaintiffs' counsel was retained by any specific new clients against Clarity.

29182777v1

13.     In December of 2015, the CFPB concluded its investigation of Clarity.  Dunham Decl. ¶ 26.

14.     Thus, as of December of 2015, Clarity was no longer involved in any active material litigation, including any litigation related to Clickspeed.  *Id*. ¶ 27.

**D.      Clarity instituted its document retention policy after the conclusion of the *Turnage* case and the CFPB inquiry.**

15.     During the time that the parties were resolving the *Turnage* case, Plaintiffs' counsel stated that they may pursue additional clients on whose behalf they would consider suing Clarity.  *Id*. ¶ 28.  As a result, Clarity retained documents produced in the *Turnage* litigation relevant to Clickspeed, including the Virginia Class List, in case Plaintiffs' counsel ultimately retained another client and decided to bring another purported class or mass action (i.e. numerous individual plaintiffs) against Clarity on behalf of these Virginia consumers.  *Id*. ¶ 29.

16.     Clarity retained this information out of an abundance of caution.  At that time, Clarity was unaware whether Plaintiffs' counsel had retained any specific clients in any planned lawsuit against Clarity.  Nor was Clarity aware of any relationship between Plaintiffs' counsel and the currently-named plaintiffs.  Nor did Clarity receive any correspondence from Plaintiffs' counsel indicating that they had retained any new clients against Clarity.  *Id*. ¶ 30.

17.     With the *Turnage* litigation and the CFPB inquiry resolved, Clarity personnel determined that it was appropriate to implement the written document retention policy memorializing the record retention policies that Clarity had been developing for two and a half years.  *Id*. ¶ 32.

18.     Clarity implemented multiple versions of its document retention policy. Ultimately, Clarity memorialized version two of its document retention policy on May 9, 2016. This version clarified the previously developed distinction between hard and soft inquiries,

6

documenting that soft inquiries were only to be retained for one year pursuant to the FCRA's one-year disclosure requirements, 15 U.S.C. § 1681g(a)(3)(A)(ii).  Dunham Decl. ¶¶ 38, 41.

19.      Clarity's decision to shorten the retention period for soft inquiries to one year matched the period for which the FCRA requires the disclosure of such inquiries.   Further, the maintenance of such information was extremely costly to Clarity, as Clarity's database houses large amounts of consumer information.  *Id*. ¶¶ 38-39.

20.      Because Clarity's document retention procedures require that soft inquiries be retained for one year, as of January 2016, Clarity's database no longer contains records of Clickspeed inquiries, as all such inquiries would be older than one year.  *Id*. ¶ 42.

**E.      Pending Action – *Jensen et al. v. Clarity Services, Inc. et al*.**

21.      After Clarity implemented its formalized document retention policy, on May 26, 2016, three named plaintiffs filed the instant action.  ECF No. 1.

22.      Count I of the lawsuit involves the policies and procedures that Clarity undertook to vet and perform due diligence on Clickspeed; Clarity's negotiations of its business arrangement with Clickspeed; Clarity's classification of Clickspeed inquiries in Clarity's consumer file disclosures; Clarity's furnishing of information to Clickspeed; and Clarity's development of its consumer information database.  *Id., passim*.

23.      On August 26, 2016, the Court entered an Order requiring Clarity to provide a complete class list (including names and addresses) to its counsel by August 30, 2016.  ECF No. 30.

24.      Clarity was unable to provide a class list including all of the individuals fitting the nationwide class definition.   As discussed above, like all soft inquiries older than one year,

Clickspeed inquiries were deleted from Clarity's systems pursuant to Clarity's document retention policy, well before the filing of the present action.  Dunham Decl. ¶¶ 49-50.

25.     Clarity took the affirmative steps, however, of preserving the class list pertaining to Virginia consumers, as well as the information produced in *Turnage* related to Clickspeed, in the event that Plaintiffs' counsel elected to pursue another claim against Clarity similar to the claim at issue in *Turnage*.  *Id*. ¶ 51.

26.     Given the size of the Virginia-only class, a finding of liability here (which Clarity disputes) would result in annihilative damages to Clarity, regardless of whether the Lawsuit was litigated on a Virginia or nationwide basis.  *Id*. ¶ 64.  Clarity estimates that the purported Virginia class alone is over 83,000 consumers.

27.     Even before Clarity filed its declaration regarding the loss of the nationwide class list, Plaintiffs had already represented to the Court that they are amenable to limiting the class to Virginia residents only, ECF No. 27, Pls.' Mem. Opp'n Defs.' Mot. Transfer Venue 8 n. 4. Plaintiffs have also pursued targeted discovery regarding a Virginia-only class.  ECF No. 33-1, Pls.' First Set of Req. for Admis. No. 4 – 36; Pl. Jensen's First Set of Interrog. No. 9 – 11.

## LEGAL STANDARD

In their brief, Plaintiffs fail to cite the full text of the recently amended Rule 37(e) in an attempt to obscure the extremely high threshold applicable under this subdivision.  Pls.' Mem. Supp. Mot. Sanctions 3.  The full text of subdivision (e) reads:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Thus, by its own terms, Rule 37(e) "applies only if the lost information should have been preserved in the anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. It "does not apply when information is lost before a duty to preserve arises." *Id.*

In addition to the duty to preserve, four additional prerequisites must be met for subdivision (e)(1) or (e)(2) to apply. Subdivision (e)(1) applies only if "a party failed to take reasonable steps to preserve the information;" "information was lost as a result;" "the information could not be restored or replaced by additional discovery;" and only "upon finding prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Subdivision (e)(2) applies upon satisfaction of the same prerequisites, with the exception of the prejudice finding, but "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." *Id.*

As recognized in the Advisory Committee's notes to 2006 amendments, which preceded the current version of subdivision 37(e):

> Many steps essential to computer operation may alter or destroy information, for reasons that have nothing to do with how that information might relate to litigation. As a result, the ordinary operation of computer systems creates a risk that a party may lose potentially discoverable information without culpable conduct on its part. Under Rule 37(f), *absent exceptional circumstances, sanctions cannot be imposed for loss of electronically stored information resulting from the routine, good-faith operation of an electronic information system.*
>
> *Id.* (emphasis added)

9

Here, Clarity's good faith implementation of its retention policy and the resulting loss of the purported nationwide class data, which Clarity had no duty to preserve in the first place, does not constitute "exceptional circumstances" that warrant any sanctions.  Clarity's actions certainly do not warrant the death sentence of a default judgment, which Plaintiffs claim they will request in the future.

## ARGUMENT

### 1.      Clarity did not owe a duty to preserve the purported nationwide class information.

Plaintiffs take a broad-brush approach to Clarity's duty to preserve Clickspeed-related materials and argue that such duty was sweeping in its scope.  According to Plaintiffs, Clarity should have (1) indefinitely maintained stale data regarding hundreds of thousands of consumers nationwide, including highly sensitive information, such as social security numbers and bank account numbers, (2) even though the Virginia-only class action in the *Turnage* matter had been settled and dismissed with prejudice, and (3) despite the fact Clarity had no indication whether Plaintiffs' counsel actually retained any client on whose behalf they could sue Clarity.  Pls.' Mem. Supp. Mot. Sanctions 4-6.  Clarity did not have such a duty.

The duty to preserve arises only "'when a party reasonably should know that the evidence may be relevant to anticipated litigation.'"  *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)) (affirming district court's decision not to award sanctions because defendant had no reason to believe that evidence would be relevant in future litigation).  Even if a duty to preserve is triggered, "the scope of information that should be preserved may remain uncertain." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also Federico v. Lincoln Military Hous., LLC*, No. 2:12cv80, 2014 U.S. Dist. LEXIS 178943, *28 (E.D. Va. Dec. 31, 2014) ("anticipating

litigation only gives rise to a duty to preserve *what the party knows will be relevant evidence*"). The Advisory Committee expressly cautions that "[i]t is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed." *Id.*; *Marten Transp., Ltd. v. Plattform Adver., Inc.*, No. 14cv02464, 2016 U.S. Dist. LEXIS 15098, \*30 (D. Kan. Feb. 8, 2016) (denying motion for spoliation sanctions; refusing to use a "perfection" standard and hindsight in assessing the scope of evidence subject to a duty to preserve).

Here, the factual reality when Clarity implemented its document retention policy was as follows:

First, Clarity's relationship with Clickspeed ended in February 2014.  Thus, Clarity no longer had any relationship with Clickspeed, nor was Clarity furnishing consumer information to Clickspeed.  Clarity no longer had a business reason to maintain a nationwide listing of all purported Clickspeed inquiries.

Second, Clarity was not required by the FCRA to retain Clickspeed inquiries for longer than one year.  *See* 15 U.S.C. § 1681g(a)(3)(A)(ii) (requiring identification of inquiries for one year).  Because Clarity's relationship with Clickspeed ended more than one year prior to the implementation of the retention policy, Clarity had no FCRA-related reason to maintain Clickspeed inquiries.

Third, by December 2015, the CFPB concluded its investigation of Clarity.  Accordingly, no preservation obligation existed pertaining to the CFPB inquiry.  Dunham Decl. ¶ 26.

Fourth, the *Turnage* lawsuit, in which the same counsel moved to certify a *Virginia-only* class, was settled and dismissed with prejudice in September 2015.  Although Plaintiffs' counsel threatened to retain additional clients, Clarity had no indication at any time prior to the filing of this lawsuit that Plaintiffs' counsel had been retained to bring any action against Clarity.  Indeed,

during the ten months between the *Turnage* settlement and the filing of this lawsuit, Plaintiffs' counsel never sent out any document preservation letter or informed Clarity that Plaintiffs' counsel retained any consumers with claims against Clarity. Thus, no preservation obligation existed as to the *Turnage* lawsuit after its conclusion.

Under these circumstances, Plaintiffs' counsel's threat to bring another lawsuit on behalf of an unknown client did not trigger any duty to preserve. Clarity had no knowledge that Plaintiffs' counsel actually retained any litigant that was preparing to sue Clarity. Moreover, Clarity certainly did not know or reasonably anticipate that any new lawsuit would involve a *nationwide* class. After all, in the *Turnage* litigation, Plaintiffs' counsel only sought to certify three Virginia-only classes, based on conduct involving three different customers of Clarity. *Turnage*, ECF No. 80, Pls.' Mem. Supp. Mot. Class Certif. 10 ("Plaintiffs seek to certify the following three *Virginia-only* classes"). To that end, Clarity was required to turn over a Virginia class list in *Turnage*, not any nationwide class list. *Turnage*, ECF No. 85, Agreed Order ¶ 4. To the extent any potential litigation was theoretically on the horizon between Clarity and Plaintiffs' counsel in the future, it appeared as though it would relate to Virginia only.

These facts do not trigger in Clarity an obligation to preserve a repository of stale consumer data pertaining to Clickspeed, especially where such preservation serves no business purpose or any statutory requirements, and is laden with both costs of preserving voluminous data and risks of consumer data breach And these facts certainly do not trigger an obligation to retain a *nationwide* purported class list, when Plaintiffs never sought to certify such a class in the prior *Turnage* litigation. Clarity's "duty to preserve [nationwide class data] d[id] not arise until" the filing of this action, which gave Clarity "notice of [the] relevance" of the nationwide class data. *Federico*, 2014 U.S. Dist. LEXIS 178943, *29 (citing *Turner v. Hudson Transit Lines,*

*Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).   Nonetheless, despite the absence of a preservation obligation, Clarity *did* take steps to preserve the Virginia class list and other relevant evidence, as set forth in Part 2 below, out of an abundance of caution.

Plaintiffs go as far as arguing that "[i]t is simply irrelevant whether Clarity was involved in active litigation with *Plaintiffs'* counsel."   Pls.' Mem. Supp. Mot. Sanctions 5.   According to Plaintiffs, just because their counsel had sued Clarity previously, Clarity had an unlimited, indefinite duty to store everything in case another Clickspeed-related lawsuit was filed *by some other consumer attorney*.   *Id.*   This is not the law.   "Reasonable anticipation of litigation" is triggered by receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim.   *Turner*, 736 F.3d at 282.   "Without a warning of future [nationwide] litigation," *id.*, Clarity had no reason to store and retain any nationwide class list.

Further, Plaintiffs' reliance on *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 280 (E.D. Va. 2004), is misplaced.   Pls.' Mem. Supp. Mot. Sanctions 3-4.   The party that deleted relevant data in *Rambus* was the plaintiff.   *Id.* at 290.   As the party initiating the lawsuit, the plaintiff in *Rambus* was well-aware of what evidence would be relevant to its claims.   *Id.* at 298 ("Where, as here, Rambus intended to engage in a specified kind of litigation, with specified, carefully selected litigation targets in specified venues and, as part of its plan to do so, set about to destroy documents relevant to those litigations, the courts cannot sanction a document retention program as legitimate").   By contrast, Clarity had no way of knowing that Plaintiffs' counsel would pursue a *nationwide* class action before the action was filed.   In any event, *Rambus* is also inapposite because the discovery motion in that case was brought pursuant to the Court's inherent authority to award sanctions for spoliation, *id.* at 287, 296-99, while, here, Plaintiffs pursue a "Motion for Rule 37(e) Sanctions," ECF No. 37 at 1.   The Advisory Committee made

13

clear that the new rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Thus, contrary to Plaintiffs' assertions that Clarity somehow knew a nationwide class action was forthcoming, the Court should "not [] be blinded to th[e] reality" that, as of December 2015, Clarity was no longer involved in any litigation related to Clickspeed and did not reasonably anticipate a nationwide class action arising out of its prior relationship Plaintiffs' counsel.  Clickspeed inquiries are the exact type of highly sensitive data that could be targeted by hackers for a data breach because such inquiries contain personal identifying information of consumers, including their names, dates of birth, social security numbers, drivers' license numbers, and bank account numbers.  Accordingly, where Clarity had neither a business purpose to retain, nor a statutory duty to disclose, Clickspeed inquiries, Clarity's continued storage of such data would have the net effect of increasing consumer risk if such personal information was compromised in the event of a data breach.  *See, e.g., In re Experian Data Breach Litigation*, No. 8:15cv01592 (C.D. Cal.) (class litigation arising from massive breach of consumer data).

Because the first prerequisite to the application of Rule 37(e)—duty to preserve—is not met, the Court need not go any further.   Sanctions are not warranted.

**2.      Clarity took reasonable steps to preserve relevant evidence.**

The Advisory Committee's notes to Rule 37(e) make clear that it "applies only if the information was lost because the party failed to take reasonable steps to preserve the information."  *Id*.  The Advisory Committee also offers additional guidance that should govern the Court's application of Rule 37(e):

> Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all

relevant electronically stored information is often impossible. As under the current rule, *the routine, good-faith operation of an electronic information system would be a relevant factor for the court to consider* in evaluating whether a party failed to take reasonable steps to preserve lost information, although the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation. *This rule recognizes that "reasonable steps" to preserve suffice; it does not call for perfection.*

*Id*. (emphasis added)

Here, despite not having a duty to preserve and despite no pending litigation, Clarity affirmatively preserved evidence relevant to the merits of Plaintiffs' claims, that is, liability, willfulness, and damages. This evidence includes documentation regarding credentialing of Clickspeed, due diligence performed to verify the information provided by Clickspeed in its application to become Clarity's customer, Clarity's policies and procedures regarding FCRA compliance, consumer file disclosures, and records relevant to Clarity's corporate formalities and Clarity's net worth. As is apparent from the summary judgment briefing in the *Turnage* matter, it is the foregoing materials, as opposed to any specific Clickspeed inquiries, that will be determinative of the critical issues in the case, *i.e.*, whether Clarity had reason to believe that Clickspeed had a permissible purpose in obtaining consumer reports from Clarity and whether Clarity followed reasonable procedures in allowing Clickspeed to access consumer reports. *See Turnage*, ECF No. 75, Def.'s Mem. Supp. Mot. Summ. J. 13–20, 27–30.

Although Clarity did not have a duty to preserve this evidence in the first place, Clarity took reasonable steps to do so by *not* implementing its retention policy with respect to the above Clickspeed-related materials and data that is relevant to this matter. Therefore, the second prerequisite to application of Rule 37(e) is not met.

3.     **Relevant evidence was *not* lost as a result of Clarity's implementation of its routine retention procedures and does *not* need to be restored.**

As addressed in preceding section, evidence relevant to this litigation has not been lost. Clarity took reasonable steps to preserve it.   Despite Clarity having no obligation to do so, Clarity has preserved evidence relevant to the current litigation, which includes documentation regarding credentialing of Clickspeed, due diligence performed on Clickspeed, Clarity's policies and procedures regarding FCRA compliance, consumer file disclosures, and records relevant to Clarity's corporate formalities and Clarity's net worth.   Therefore, the third required element of Rule 37(e) is not satisfied.

4.     **Plaintiffs have not suffered any prejudice from the loss of the purported nationwide class information.**

In their brief, Plaintiffs claim prejudice from the loss of the number and identities consumers outside of Virginia.  They characterize this information as critical evidence on which not only class ascertainability, but also the finding of willfulness, will rise or fall in this case. Pls.' Mem. Supp. Mot. Sanctions 5-6.   In reality, a nationwide list of Clickspeed inquiries is not material evidence on either issue.

Loss of the purported nationwide class list is not an obstacle to class ascertainability. Plaintiffs have already represented their willingness to pursue class certification on behalf of Virginia residents only, as was also done in *Turnage*.   ECF No. 27, Pls.' Mem. Opp'n Defs.' Mot. Transfer Venue 8 n. 4.   To that end, and before Plaintiffs had knowledge of the facts set forth in Sean Dunham's declaration regarding the loss of the nationwide class data, Plaintiffs had already pursued targeted discovery regarding Virginia-only class.  ECF No. 33-1, Pls.' First Set of Req. for Adm. No. 4–36; Pl. Jensen's First Set of Interrog. No. 9–11.  Plaintiffs' subsequent Motion for Sanctions based on the loss of a nationwide class data is a disingenuous attempt to

29182777v1

capitalize on Clarity's retention policies.  Clarity has preserved the Virginia class list, has provided it to its counsel, and has already represented to Plaintiffs that it will not object to numerosity requirement being met with respect to the purported Virginia class.  The loss of the purported nationwide class list has no bearing on Plaintiffs' purported Virginia class.

Likewise, the finding of willfulness, if any, will depend on Clarity's credentialing procedure and its implementation on the front end of its relationship with Clickspeed.  It will not turn on the existence of a list identifying all consumers nationwide on who Clarity furnished information to Clickspeed.  *Id*. at 27-30.  Even if the number of the alleged inquiries (and, thus, the number and identities of out-of-state consumers with Clickspeed inquiries) were helpful to establishing willfulness, as Plaintiffs contend, Pls.' Mem. Supp. Mot. Sanctions 5-6, the purported Virginia class of over 83,000 members would be more than sufficient for any willfulness-related purpose Plaintiffs may claim exists.[2]  Thus, the prerequisite to application of Rule 37(e)(1) is not satisfied.

**5.  Clarity did not act with the intent to deprive Plaintiffs of the use of any relevant information as to which Clarity had a duty to preserve.**

By its plain terms, subdivision 37(e)(2) applies only "on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  While subdivision 37(e)(2) authorizes potentially severe sanctions, the Advisory Committee

---

[2] Indeed, if review of each putative class member's file was necessary to resolve class claims, Rule 23 requirements of commonality, typicality, and predominance would not be met, thus precluding class certification.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common 'question'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."); *see also Bright v. Asset Acceptance, Inc.*, 292 F.R.D. 190, 201 (D.N.J. 2013) (a plaintiff must "demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.").

17

emphasizes that "[c]ourts should exercise caution … in using the measures specified in (e)(2)." *Id*.  The notes further provide that:

> Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). ***The remedy should fit the wrong***, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

> *Id*.

The same limitation applies to any measures the Court employs under subdivision 37(e)(1).  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Once a finding of prejudice is made, the court is authorized to employ measures no greater than necessary to cure the prejudice.").

Here, although Plaintiffs freely sprinkle phrases such as "intentional destruction" throughout their brief, Clarity's declaration regarding its retention policy shows anything but any intent to deprive Plaintiffs of the use of the relevant information.  ECF No. 34-1, Dunham Decl. *passim*.  As a threshold matter, no duty to preserve existed.  And regardless of whether it did, Clarity preserved relevant evidence, including records and data regarding its credentialing of Clickspeed, as well as its relevant policies and procedures, consumer file disclosures, and its corporate and financial records.  Indeed, if Clarity sought to intentionally deprive Plaintiffs of relevant information, it would have purged all Clickspeed-related data but retained all other, unrelated data.  Instead, Clarity preserved such evidence, including evidence from the *Turnage* matter.  Therefore, the "intent" element of subdivision 37(e)(2) is not satisfied.

Even if all prerequisites to application of either subdivision 37(e)(1) or (e)(2) were met— and they are not —the appropriate remedy should be limited to "fit the wrong."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Here, the identities of out-of-state

18

consumers would, at best, provide evidence that is cumulative of the evidence that can be obtained from a statistically-relevant sampling of the Virginia class members.  Indeed, Plaintiffs' counsel cannot seriously contend that they would examine Clickspeed inquiries on potentially hundreds of thousands of consumers.  *See Federico*, 2014 U.S. Dist. LEXIS 178943, *62-63 (noting that, where requested information is "only marginally relevant" and "largely cumulative," "under the proportionality limits set forth in Rule 26(b)(2)(C), the cost of producing it outweighs the likely benefit of the information produced considering the needs of the case").

In sum, no remedy is warranted.  However, should the Court conclude otherwise, the remedy, if any, should be limited to ordering the reasonable inspection of Clarity's records for the sole purpose of determining whether nationwide class information can be recovered, provided that: (a) the inspection is performed by an independent third-party expert mutually agreed upon by Plaintiffs and Defendants; (b) the inspection is monitored by Clarity's Chief Technology Officer Gordon James, or his designee; (c) the inspection is performed without interruption of Clarity's daily operations; (d) the expert's report from the inspection is limited to whether the purported nationwide class data can be recovered; (e) if class information is recovered, it shall not be produced to Plaintiffs or their counsel absent prior agreement by the parties or Court Order; (f) the expert be bound by a duty of confidentiality with respect to any information to which he becomes privy in the course of the inspection; and (g) all expenses and costs are to be paid by Plaintiffs.

## **CONCLUSION**

Defendant Clarity Services, Inc., respectfully requests that the Court deny Plaintiffs' Motion for Sanctions.  Clarity does not object to reasonable inspection of its electronic data for purpose of determining whether nationwide class information can be recovered, provided that:

29182777v1

(a) the inspection is performed by an independent third-party expert mutually agreed upon by Plaintiffs and Defendants; (b) the inspection is monitored by Clarity's Chief Technology Officer Gordon James, or his designee; (c) the inspection is performed without interruption of Clarity's daily operations; (d) the expert's report from the inspection is limited to whether the purported nationwide class data can be recovered; (e) if class information is recovered, it shall not be produced to Plaintiffs or their counsel absent prior agreement by the parties or Court Order; (f) the expert be bound by a duty of confidentiality with respect to any information to which he becomes privy in the course of the inspection; and (g) all expenses and costs are to be paid by Plaintiffs.

Dated:  September 15, 2016                    Respectfully submitted,

                                              **CLARITY SERVICES, INC.,**


                                              By:    /s/ David M. Gettings
                                                     Of Counsel

John C. Lynch (VSB No. 39267)
David M. Gettings (VSB No. 80394)
Maryia Y. Jones (VSB No. 78645)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7747
Facsimile:  (757) 687-1545
E-mail:  john.lynch@troutmansanders.com
E-mail:  david.gettings@troutmansanders.com
E-mail: maryia.jones@troutmansanders.com

Rodney Lewis (ARDC #6288353)
(*admitted pro hac vice*)
POLSINELLI PC
161 North Clark Street, Suite 4200
Chicago, IL 60601
Tel: 312-819-1900
Fax: 312-819-1910
Email: rodneylewis@polsinelli.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Leonard A. Bennett, Esq.
Craig C. Marchiando, Esq.
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail:  lenbennett@clalegal.com
E-mail:  craig@clalegal.com
*Counsel for Plaintiffs*

Kristi Cahoon Kelly, Esq.
Andrew J. Guzzo, Esq.
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 – Telephone
(703) 591-9285 – Facsimile
E-mail:  kkelly@kellyandcrandall.com
E-mail:  aguzzo@kellyandcrandall.com
*Counsel for Plaintiffs*

James Wilson Speer, Esq.
Virginia Poverty Law Center
919 E Main Street, Suite 610
Richmond, VA 23219
(804) 782-9430 – Telephone
(804) 649-0974 – Facsimile
Email: jay@vplc.org
*Counsel for Plaintiffs*

/s/ David M. Gettings
David M. Gettings (VSB No. 80394)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7747
Facsimile:  (757) 687-1545
E-mail:  david.gettings@troutmansanders.com

*Counsel for Defendants*

21

29182777v1